IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| ALL TEXAS ELECTRICAL CONTRACTORS, INC. | § | CASE NO. 20-34656 |
| ATE | § | |
| | § | |
| ALL TEXAS ELECTRICAL CONTRACTORS, INC. | § | |
| Plaintiff | § | |
| | § | |
| v. | § | ADV. PROC. NO. 23-____ |
| | § | |
| GAMMA CONSTRUCTION COMPANY | § | |
| | § | |
| Defendants | § | |

**COMPLAINT OF PLAINTIFF ALL TEXAS ELECTRICAL CONTRACTORS, INC.
BROUGHT AGAINST DEFENDANT, GAMMA CONSTRUCTION COMPANY (1) TO
ENFORCE THE CHAPTER 11 PLAN'S PROHIBITION AGAINST UNAUTHORIZED
SETOFFS, (2) FOR BREACH OF CONTRACT, (3) ALTERNATIVELY, FOR QUANTUM
MERUIT, (4) ALTERNATIVELY, FOR UNJUST ENRICHMENT, (5) FOR VIOLATIONS
OF THE TEXAS CONSTRUCTION TRUST FUND ACT, AND (6) OBJECTION TO THE
PROOF OF CLAIM OF GAMMA CONSTRUCTION COMPANY**

Contents

I.      Parties ............................................................................................................ 2

II.     Jurisdiction, Venue and B.R. 7008 ............................................................... 3

III.    Background .................................................................................................... 3

A.      The Seamless Transition to a Replacement Electrical Subcontractor ................................. 3

i.      The Fixed-Price Replacement Contract with Gamma's Wholly-Owned Subsidiary .......... 4

B.      The Court-Authorized Direct-Pay and Setoff Program ..................................... 5

C.      The Plan's Prohibition of Unauthorized Setoffs .............................................. 6

D.      The $574,784 Gamma Now Owes to ATE ...................................................... 7

E.      Unauthorized Setoffs for "Change Orders" Under the Replacement Subcontract .............. 8

i.      "Change Order" For Direct-Pays to ATE Vendors .......................................... 8

ii.     "Change Order" That Shifts Covid Cost Spikes to Gamma ................................ 9

F.      Unauthorized Setoff for Concrete .................................................................. 9

G.      Failure to Credit for Materials/Equipment Left on the Job Sites ........................ 10

IV.     First Count – Enforcement of Plan Prohibition Against Unauthorized Setoffs ................ 10

V.      Second Count – Breach of Contract ................................................................. 11

VI.     Third Count - Quantum Meruit ...................................................................... 13

VII.    Fourth Count - Unjust Enrichment ................................................................. 13

VIII.   Fifth Count – Violations of the Texas Construction Trust Fund Act .................... 14

IX.     Sixth Count - Objection to Gamma Proof of Claim ......................................... 15

X.      Attorneys Fees .............................................................................................. 16

XI.     Conditions Precedent ..................................................................................... 16

XII.    Damages ........................................................................................................ 16

ATE All Texas Electrical Contractors, Inc. respectfully shows:

## I.      **Parties**

1.      All Texas Electrical Contractors, Inc. ("ATE") is a Texas corporation and chapter 11 debtor in the above-styled bankruptcy case.  ATE may be served with pleadings and process in this adversary proceeding through its undersigned counsel.

2

2.     Gamma Construction Company ("Gamma") is a corporation organized under the laws of the State of Texas.  Gamma  may be served with process care of its registered agent, S. Keith Williams at 2808 Joanel, Houston, Texas 77027.

## II.     Jurisdiction, Venue, and B.R. 7008

3.     This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding. This Court has authority to enter a final judgment in this proceeding.  Venue is proper pursuant to 28 U.S.C. § 1409.

4.     ATE consents to entry of final orders by the Bankruptcy Court, including if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## III.     Background

5.     ATE was an electrical subcontractor. Most of the construction jobs worked by ATE were public, usually schools. On such jobs, retainage owed is not paid until at least 12 months following completion of the job. As anticipated, that feature of the industry has delayed some collections, including collections from Gamma.  However, now all Gamma jobs are substantially complete.

### A.  The Seamless Transition to a Replacement Electrical Subcontractor

6.     When the bankruptcy case was filed, there were approximately six active jobs between ATE and Gamma.   Immediately after filing for bankruptcy-- with the emergency attention of this Court ---ATE took swift and significant steps to smooth the transition by Gamma (and other general contractors) to a new electrical subcontractor to replace ATE.

7.     Under their pre-bankruptcy construction contracts, Gamma asserts contractual offset rights against ATE.  As such, reducing the disruption to Gamma was in ATE's interest because doing so would minimize reductions in what Gamma would ultimately owe ATE.

8.     ATE, therefore, with the help of its owner, made sure its workers on the Gamma jobs—many of whom worked paycheck-to-paycheck  --received their weekly wages without delay.  Doing so dissuaded the workers from quitting and seeking other work—spooked by the bankruptcy filing – rather than transitioning to Gamma's replacement electrical contractor.

### i.     The Fixed-Price Replacement Contract with Gamma's Wholly Owned Subsidiary

9.     To replace ATE, on or about October 19, 2020, Gamma entered a contract with a wholly owned subsidiary (Epsilon Electric, LLC), the entity selected by Gamma to complete construction of Alvin High School Number 4.  To further smooth the transition, Gamma caused Epsilon to hire ATE's former project manager, Scott Montemayor, the son of ATE's owner.

10.     The Gamma/Epsilon replacement contract fixed the price to be paid to Epsilon at $7,908,717.67.[1]  Shortly thereafter came the Covid-19-related material and labor shortages that drove up prices (hereinafter the "Covid Cost Spikes").

11.     The ***fixed-price***  contract unambiguously allocates  the burden of the Covid Cost Spikes to Epsilon.    The contract reads, in pertinent part:

> Subcontractor [Gamma-affiliate, Epsilon] ***shall furnish and pay all labor, services, and materials***, ***and perform all work*** ("the "Work") necessary of incidentally required for the completion of that part of the Work covered by the Contract Documents as follows: …

---

[1]     The Gamma/Epsilon contract provides:  "The Contractor shall pay the Subcontractor for said work the sum of * SEVEN MILLION NINE HUNDRED EIGHT THOUSAND SEVEN HUNDRED SEVENTEEN AND SIXTY SEVEN CENTS AND NO/100—DOLLARS ($ 7,908,717.67)*"

Hereinafter the above excerpt is referred to as the "Scope of Work Clause." [2]

### B.  The Court-Authorized Direct-Pay and Setoff Program

12.    Prior to plan confirmation, ATE's unpaid vendors had potential trust fund claims under the Texas Construction Trust Fund Act.  They also might have filed liens or bond claims. Because ATE knew that when construction on the jobs completed, ATE would be owed money, ATE desired to minimize disruption  and expense to general contractors, thereby minimizing anticipated setoff claims that would potentially negatively impact ATE's ability to collect from general contractors.

13.    Therefore, on November 24, 2020, the Court authorized a general contractor "direct pay" and corresponding "setoff" program described  in this Court's order at ECF # 83 in the main case, which requires:

a)  Five days' prior written notice to ATE and other notice parties;

b)  The name and amounts to be paid to vendors;

c)  Identification of the job that is the subject of the proposed direct-pay;

d)  Invoice numbers,

e)  If requested, copies of the invoices;

f)  An expedited hearing in the event of objections by the notice parties; and

---

[2] The replacement contract contains the following provision as to change orders.

> All claims by Subcontractor relating to Subcontractor's Work, including, without limitation, any claimed adjustment to the Subcontract amount and any claimed delay in prosecution of Subcontractor's Work (collectively , a "Claim") shall be submitted to Contractor in writing within 72 hours after the occurrence of the event giving rise to the claim or, if earlier, in advance of the time required for submitting any such Claim under the Contract Documents. *Any Claim not timely submitted shall be deemed waived* by Subcontractor. [emphasis added, hereinafter the "Change Order Clause"]

g) An opt-out procedure in the event of sworn, itemized accountings from general contractors.

14.     Gamma took advantage of the Court-authorized "direct pay" and "setoff" program, thereby avoiding the delays and expense of liens, bond claims, and trust fund claims.

15.     While Gamma took advantage of the program, ATE tracked Gamma's "direct pays" to ATE vendors and setoffs of what Gamma owes ATE.   Factoring in payments made by Gamma pursuant to the Court-authorized program, ATE is now owed $574,784.

**C.  The Plan's Prohibition of Unauthorized Setoffs**

16.     On March 5, 2021, this Court confirmed ATE's liquidating chapter 11 plan. Subpart D of part XV of the confirmed plan (under the subheading "Setoff & Recoupment") provides:

> Neither this provision [preserving ATE's setoff rights] nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein; ***provided that***, unless already authorized by the Bankruptcy Court, ***the exercise of such right shall not be permitted unless,*** within 30 days of the Effective Date, ***the Creditor files with the Court and serves the Debtor written notice of the intent to setoff or recoup,*** which filing, to be effective, must include a sworn written accounting.  Unless the setoff or recoupment has already been authorized by the Bankruptcy Court, ***failure by a Creditor to timely following*** [sic] ***the Setoff Procedure shall result in a permanent waiver of the right to setoff or recoupment by the Creditor and the claim will no longer be enforceable against the Debtor.*** If the Debtor or the Disbursing Agent, as applicable, object in writing within twenty (21) business days following the receipt of such notice, such exercise shall only be allowed upon order of the Bankruptcy Court.  In the absence of timely objection, the Creditor may implement the proposed setoff or recoupment against the Claim held by the respective Bankruptcy Estate. [emphasis added]

**D.  The $574,784 Gamma Now Owes to ATE**

17.    By the time of filing this complaint all the Gamma jobs on which ATE worked are complete and have been for many months.  ATE has been exchanging documents and information with Gamma but the parties are nowhere near agreement regarding whether and how much Gamma owes ATE.

18.    According to ATE's books and records, and as set forth in the chart immediately below,  Gamma owes ATE at least $574,784 (hereinafter the "Sums Due") not including interest and attorney fees.

19.     Gamma never filed a notice of intent to setoff or recoup in accordance with the confirmed plan, see III, B  herein.  Thus, even if the disputed offsets had any legitimate bases they are now barred by final order of this Court.

| ATE/Gamma job | Amount owed by Gamma to ATE |
|---|---|
| Kelsye-Sebold Cypress Crossing | 279.43 |
| Alvin ISD # 8  (junior High located at 9727 Manvel Parkway, Manvel, TX 77578) | 36,508.25 |
| Humble ISD # 29 (Elementary School located at 12500 Lakewood Pines Blvd., Houston, TX 77044) | -34,881.54 |
| St Francis School (335 Piney Point Rd, Houston TX 77024) | 17,519.93 |
| Kelsey Kingwood  (2553 US Hwy 59, Porter, TX) | 185,082.00 |
| Alvin ISD #4 (high school located at 3700 CR 64, Iowa Colony, TX) | 370,275.93 |
| Total Amount owed to ATE | 574784 |

### E.  Unauthorized Setoffs for "Change Orders" Under the Replacement Subcontract

20.    ATE has been forced to bring this suit because Gamma is offsetting what it owes ATE with illegitimate deductions—offsets prohibited by the confirmed plan  --in part based on unsupportable alleged change orders.

21.    As the Court knows, "change orders" in the construction industry are amendments to a construction contract that modify the  scope of work to be performed.  Change orders, as such, increase or decrease the contract price to be paid for the construction services. Based on document provided by Gamma, as between Gamma and Epsilon, there were 36 alleged change orders, totaling  $1,342,396.07.    However, two of the alleged change orders—which alone total $991,791.07 --- are not true change orders.   They do not change the scope of work.  Nor do they do qualify as change orders under the Change Order Clause. See note 2 herein.  (And again, setoffs based upon the alleged change orders violate the confirmed plan, see III, B herein.)

#### i.  "Change Order" For Direct-Pays to ATE Vendors

22.    The first facially defective alleged change order is dated May 25, 2021, in the amount of $583,054.07.  A true and correct copy of the document produced by Gamma is attached hereto and marked **Exhibit A**.   The "description of change" reads "All Texas Electrical Vendor Payments."  The "change" in the "change order" is to, without legal justification, inject into the Epsilon replacement contract the cost of Gamma's direct-pays to ATE's vendors.

23.    ATE, of course, is not a party to the Gamma/Epsilon contract.  The alleged change order is not a true change order.  It does not modify the scope of work under the Gamma/Epsilon contract.   There is no legitimate reason that ATE's unpaid vendors would be the subject of the Gamma subcontract with the electrical contractor who replaced ATE.

24.     And again,  Gamma *__already offset__* what it owes ATE for its direct-pays to ATE's vendors.   The effect of the "change order" is double-dipping by Gamma, at the expense of ATE's other creditors.

### ii.     "Change Order" That Shifts Covid Cost Spikes to Gamma

25.     The second facially defective change order is dated May 26, 2022, in the amount of $408,737.   The "description of change" reads "Reimbursement for labor material cost increases."   A true and correct copy of the "change order" is attached and marked **Exhibit B**.

26.      The problems are:  One, as Gamma surely knows, reimbursements of labor and material costs is not a change in the scope of work and thus is not a change order.  Two, from its inception, the replacement contract clearly imposes on Epsilon, not Gamma, the burden of paying labor and material costs.

27.     For context, Keith Williams owns Gamma.   Gamma owns 100% of Epsilon.   See the attached **Exhibit C**, which is a true and correct copy of the most recent filing by Epsilon with the Texas Secretary of State.

28.      Keith Williams is the chief executive officer of both Gamma and Epsilon.    Thus, should Epsilon have to absorb the Covid Cost Spikes, then Gamma and Keith Williams would also,  indirectly, absorb the Covid Cost Spikes.   The effect of the contrived "change order" is-- without legal justification --hoisting the Covid Cost Spikes upon ATE and its creditors.

## F.  Unauthorized Setoff for Concrete

29.     ATE's contract with Gamma does _not_ obligate ATE to pay for concrete.   However, Gamma's accountings shared with ATE charges ATE $23,652 for concrete.   ATE should not be charged for that and it should not be offset.

### G.  Failure to Credit for Materials/Equipment Left on the Job Sites

30.     ATE left materials and equipment on the Gamma job sites. Gamma's calculations reflect no credit to ATE for materials and equipment left on sites.  ATE is entitled to credit. Materials and equipment left include, ladders, tools, tool ("gang[3]") boxes, light fixtures, panels and switch gear.

### IV. First Count – Enforcement of Plan Prohibition Against Unauthorized Setoffs

31.     ATE incorporates the preceding paragraphs (and the paragraphs below this section) as if fully restated herein.

32.     The  Gamma/Epsilon "change order" for "All Texas Electrical Vendor Payments", see III, E (i) herein, is dated May 25, 2021.

33.     The Gamma/Epsilon "change order" for Covid Cost Spikes, see III, E (ii) herein, is dated May 26, 2022.

34.     At this time, the date of the unauthorized concrete setoff, see III, F above, is not known to ATE.

35.     By January 2023, the Alvin High School job – the subject of the Gamma/Epsilon replacement contract – was completed.

36.     Subpart D of part XV of the confirmed plan provides:

> [T]he exercise of such [setoff] right shall not be permitted unless, within 30 days of the Effective Date, [1] the Creditor files with the Court and [2] serves the Debtor [3] written notice of the intent to setoff or recoup, which filing, to be effective, must [4] include a sworn written accounting.  Unless the setoff or recoupment has already been authorized by the Bankruptcy Court, failure by a Creditor to timely following the Setoff Procedure shall result in a permanent waiver of the right to setoff or recoupment by the Creditor and the claim will no longer be enforceable against the Debtor.

---

[3] Generally, where workers gathered and locked up their tools.

37. The Effective Date of the plan was November 15, 2021. See ECF # 193 in the main case.

38. At all material times Gamma was on notice of this plan provision. Yet, as to the setoffs complained of herein, see III E and F above, Gamma:

    a. filed no written notice of the intent to setoff or recoup;

    b. served no written notice of the intent to setoff or recoup; and

    c. neither filed nor served a sworn written accounting.

39. As such, under the confirmed plan, Gamma "permanently waive[d] … the right to setoff or recoupment …. and the claim[s] … [are] no longer … enforceable against the Debtor." (Not that the illegitimate "change orders" ever were enforceable against ATE in the first place.)

40. For these reasons, pursuant to part VIII, P[4] of the confirmed plan, ATE asks the Court to (i) declare the alleged "change orders" unauthorized, (ii) declare the alleged "change order" in contempt of the confirmed plan, and (iii) enforce the plan against Gamma by ordering Gamma to permanently ceases and desist from the setoffs and to pay ATE the $574,784 owed to ATE.

### V. Second Count – Breach of Contract

41. ATE incorporates the preceding paragraphs (and the paragraphs below this section) as if fully restated herein.

---

[4] "The Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan. The Bankruptcy Court shall retain jurisdiction to enter such orders, judgments, and rulings."

42.     On these facts—including the competition of all the projects and Gamma suffering no material damages --the payment provisions of the following Gamma/ATE contracts are valid and enforceable.

| ATE/Gamma job | Job #/Line # | |
|---|---|---|
| Kelsey-Sebold Cypress Crossing, (13105 Wortham Center Dr., Houston, TX 77065), | 1619-DS-08/4800 | 279.43 |
| Alvin ISD # 8  (junior High located at 9727 Manvel Parkway, Manvel, TX 77578) | 1813 | 36,508 |
| | | |
| St Francis School (335 Piney Point Rd, Houston TX 77024) | 2002 | 17519.93 |
| Kelsey Kingwood  (2553 US Hwy 59, Porter, TX) | 1807-DO-094800 | 185,082.00 |
| Alvin ISD #4 (high school located at 3700 CR 64, Iowa Colony, TX) | 1904-RB-05/4800 | 370,275.93 |

43.     ATE is a party to the contracts with the right to enforce them by bringing this suit.

44.     ATE substantially performed under the contracts.

45.     ATE timely submitted pay applications.

46.     The contract obligates Gamma to pay ATE the Sums Due.

47.     Gamma has breached the contracts by failing to pay ATE.

48.     As a result of Gamma's breach, ATE has suffered damages equal to the Sums Due and is entitled to attorney fees costs and interest.

## VI.Third Count - Quantum Meruit

49.     ATE incorporates the preceding paragraphs (and the paragraphs below this section) as if fully restated herein.

50.     ATE seeks to be compensated for its services under a theory of quantum meruit. ATE has provided defendant with valuable goods and services.  Defendant accepted and took advantage of those goods and services in completing their various projects.

51.     Defendant sought out, requested and accepted ATE's services which were provided to its benefit.  Defendant knew that ATE expected compensation for its labor and materials, but after fully accepting the services, Defendant has refused to pay ATE.

52.     As a consequence of non-payment, ATE has been damaged and seeks to recover the reasonable value of the labor and services that it provided in the amount equal to the Sums Due but for which defendant has failed to pay.  In addition, to the extent that it is determined that ATE only partially performed, it is entitled to a quantum meruit claim for the value of the services and material provided.

## VII. Fourth Count - Unjust Enrichment

53.     ATE incorporates the preceding paragraphs (and the paragraphs below this section) as if fully restated.

54.     Unjust enrichment is an equitable theory of recovery, holding that one who receives benefits unjustly should make restitution for those benefits and is not dependent on the existence of a wrong. *Bransom v. Standard Hardware, Inc*. 874, S.W.2d 919, 927 9Tex. App. – Ft. Worth 1994, writ denied).  An entity is unjustly enriched when it obtains a benefit from another by fraud, duress, or the taking of an undue advantage.  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W. 2d 39, 41 (Tex.1992).  A key element of unjust enrichment is that the person sought to be

charged wrongly secured or passively received a benefit. (emphasis added).  *Villarreal v. Grant Geophysical, Inc.* 136 S.W.3d 265, 270 9 Tex. App. – San Antonio 2004, pet. denied).

55.     Gamma clearly received the benefit of the services rendered by ATE.  ATE performed the work detailed in the contract including by the installation and use of materials and goods owned by ATE.  These were services, materials, and goods required to complete the various Gamma contracts with property owners.

56.     Gamma allowed ATE to perform the work and derived the benefit for the work performed.   Gamma is engaging in offsets prohibited by the confirmed plan, and withholding construction trust funds.  Under these circumstances, it would be unconscionable for Gamma to retain the value of the services and property without paying.

57.     In addition, to the extent that it is determined that ATE only partially performed, it is entitled to an unjust enrichment claim for the value of the services and material provided.

**VIII. Fifth Count – Violations of the Texas Construction Trust Fund Act**

58.     ATE incorporates the preceding paragraphs (and the paragraphs below this section) as if fully restated herein.

59.     This cause of action is brought under Tex. Prop. Code § 162 *et seq*.

60.     The property owners on the projects identified above in part III, D above contracted with Gamma for the improvement of specific real property within Texas.  Payments made to Gamma (or to its officers or agents) are therefore trust funds.  See Tex. Prop. Code § 162 *et seq*. For instance, Gamma owes ATE an aggregate of over $300,000 that property owners paid to Gamma out retainage on long completed jobs.

2.     Gamma received such trust funds.

61.   Gamma intentionally or knowingly or with intent to defraud, directly or indirectly retained, used, disbursed, or otherwise diverted trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds.

62.   Gamma  "diverted" trust funds as contemplated in the Construction Trust Fund Statute.

63.    ATE is a beneficiary of the trust funds.

64.   With actual knowledge that ATE had not been paid, Gamma retained, used, disbursed, or diverted trust funds with the intent to deprive ATE.

65.   Gamma misapplied the trust funds.

66.   ATE is therefore entitled to judgment against Gamma in an amount not less than the Sums Due and for exemplary damages.

### IX. Sixth Count - Objection to Gamma Proof of Claim

67.   ATE incorporates the preceding paragraphs as if fully restated.

68.   Claimant: Gamma Construction Company.

69.   Date the proof of claim (if any) filed: January 25, 2021.

70.   Amount of claim as scheduled: $177,497.16.

71.   Classification of claim (secured/priority, general unsecured) as filed: general unsecured.

72.    Person designated[5] on the claimant's proof of claim as the person to receive notices: Maria M. Bartlett.

---

[5] Fed.R. Bankr. P. 3007(a)(2)(A).

73.     According to the books and records of ATE, ATE owes Gamma nothing, and Gamma owes ATE at least $574,784.  Attached as **Exhibit D** is the unsworn declaration of Arthur Montemayor.

74.     For all the reasons above, including parts III through IX herein, Gamma's claim should be disallowed.

75.     In addition, the proof of claim is based on a writing, the contract between Gamma and Debtor, and related documents reflecting the basis of the amounts allegedly owed. However, the claim does not attach sufficient back-up documentation in a manner that complies with Bankruptcy Rule 3001(c).  This is an additional reason for disallowance of the claim.

## X. **Attorneys Fees**

76.     ATE is entitled to recover its reasonable attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code §38.001, Tex. Bus. & Comm. Code §24.013, Tex. Prop. Code §28.005, and 11 U.S.C. § 105.

## XI. **Conditions Precedent**

77.     All conditions precedent have been performed or have occurred.

## XII. **Damages**

78.     ATE brings these causes of action and seeks recovery of the Sums Due, pre-judgment interest (at 18%, as set forth above), attorney's fees, post-judgment interest, and costs.

79.     As set forth above, breached its fiduciary duties to ATE under the Texas Construction Trust Fund Act. Therefore, ATE seeks exemplary damages. *McCullough v. Scarbrough, Medlin & Assoc.*, 435 S.W.3d 871, 911 (Tex.App. –Dallas, 2014, pet. denied) (exemplary damages appropriate when injuries resulted from fraud, malice, or gross negligence).

80.     In addition, as set forth above, Gamma is in ongoing contempt of the confirmed chapter 11 plan's prohibition against unauthorized setoffs.  See IV herein.  ATE is entitled to an award of damages necessary to remedy the contempt, including the attorney fees and costs ATE has incurred to protect ATE's ability to get its creditors paid.

81.     This Court has wide discretion to fashion sanctions for civil contempt. *In re SkyPort Glob. Commc'ns, Inc.,* No. 08-36737-H4-11, 2013 WL 4046397, at *45 (Bankr. S.D. Tex. Aug. 7, 2013) (awarding attorney fees as a sanction, despite no showing of damages, for civil contempt of chapter 11 plan), aff'd, 528 B.R. 297 (S.D. Tex. 2015), aff'd *In re Skyport Glob. Commc'n, Inc.,* 642 F. App'x 301 (5th Cir. 2016), citing *E. Ingraham Co. v. Germanow*, 4 F.2d 1002, 1003 (2d Cir. 1925); *Danielson v. United Seafood Workers*, 405 F. Supp. 396, 403 (S.D.N.Y. 1975). "Sanctions imposed after a finding of civil contempt should serve two functions: to coerce future compliance, and to remedy past non-compliance."  *In re Skyport* citing *United States v. United Mine Workers*, 330 U.S. 258, 302-04 (1947).

82.     "Many courts have ordered the payment of actual damages, including attorneys' fees, from one party to another as a civil contempt sanction." *In re Skyport* citing *Petroleos Mexicanos v. Crawford Enters*., 826 F.2d 392, 399 (5th Cir. 1987) ("[S]anctions for civil contempt are meant to be wholly remedial and serve to benefit the party who has suffered injury or loss at the hands of the contemnor."). "This sort of sanction is not vindictive, ***but simply acts as reparation, restoring the parties to the positions they would have been in had the respondent complied with the court's order in the first place*.**" *In re Skyport* citing *Vuitton et fils, S.A. v. Carousel Handbags, et al*., 592 F.2d 126, 130 (2d Cir. 1979) (emphasis added).

## XIII.     Prayer

83.          All Texas Electrical Contractors, Inc. prays that defendants be cited to appear and answer this complaint, and that, upon final hearing, All Texas Electrical Contractors, Inc. be granted judgment against the defendants for:

i.     A declaration that Gamma is in violation of and in contempt of the chapter 11 plan;
ii.    A declaration that Gamma is not entitled to the setoffs;
iii.   A judgment for breach of contract, or in the alternative quantum meruit or unjust enrichment;
iv.    A judgment for violation of the Texas Construction Trust Fund Act;
v.     Disallowance of Gamma's proof of claim;
vi.    All damages allowable under law;
vii.   Pre-judgment interest;
viii.  Reasonable attorney's fees;
ix.    Post-judgment interest;
x.     Costs of Court; and
xi.    Such other and further relief, at law or in equity, to which plaintiff may be justly entitled.


Respectfully submitted:


O'CONNORWECHSLER PLLC
By: */s/ Annie Catmull*____
          Annie Catmull
          State Bar No. 00794932
          aecatmull@o-w-law.com
          Kathleen A. O'Connor
          State Bar No. 00793468
          kaoconnor@o-w-law.com
          4400 Post Oak Parkway, Suite 2360
          Houston, Texas 77027
          T: (281) 814-5977
          F: (713) 225-6126

          ATTORNEYS FOR PLAINTIFF

# GAMMA CONSTRUCTION

## CHANGE ORDER
## No. 00017

2808 Joanel Street
Houston, TX  77027

Phone: 713-963-0086
Fax: 713-963-0961

**TITLE:**   ATE Vendor Payments

**EXHIBIT A**

**DATE:** 5/25/2021

**PROJECT:** Alvin High School # 4

**JOB:** 1904

**TO:**   EPSILON ELECTRIC, LLC.
2808 Joanel St.
Houston, TX  77027

**CONTRACT NO:** 1904-RB-64

**ATTN:**   Scott Montemayor

| RE: | To: | From: | Number: |
|---|---|---|---|

**DESCRIPTION OF CHANGE**

All Texas Electric vendor payments.

| Item | Description | Stock# | Quantity | Units | Unit Price | Tax Rate | Tax Amount | Net Amount |
|---|---|---|---|---|---|---|---|---|
| 00001 | ATE Vendor Payments | | 1.000 | Lump Sum | ($583,054.07) | 0.00% | $0.00 | ($583,054.07) |

| | |
|---|---|
| **Unit Cost:** | ($583,054.07) |
| **Unit Tax:** | $0.00 |
| **Lump Sum:** | $0.00 |
| **Lump Tax:** | $0.00 |
| **Total:** | ($583,054.07) |

| | |
|---|---|
| The Original Contract Sum was | $7,908,717.67 |
| Net Change by Previously Authorized Requests and Changes | $161,450.00 |
| The Contract Sum Prior to This Change Order was | $8,070,167.67 |
| The Contract Sum Will be Decreased | ($583,054.07) |
| The New Contract Sum Including This Change Order | $7,487,113.60 |
| The Contract Time Will Not Be Changed | |
| The Date of Substantial Completion as of this Change Order Therefore is | |

**ACCEPTED:**

**EPSILON ELECTRIC LLC.**

**GAMMA CONSTRUCTION**

By: _Scott Montemayor_     By: _____     By: _____

Scott Montemayor          Vance Broussard

Date: _6/18/21_     Date: _5/25/2021_     Date: _____

Expedition N

**GAMMA 0404**

# GAMMA CONSTRUCTION

**CHANGE ORDER**
**No. 00033**

2808 Joanel Street
Houston, TX  77027

**Phone:** 713/963-0086
**Fax:** 713/963-0961

**TITLE:** Cost Increases

**DATE:** 5/26/2022

**PROJECT:** Alvin High School # 4

**JOB:** 1904

**TO:**   EPSILON ELECTRIC, LLC.
2808 Joanel St.
Houston, TX  77027

**CONTRACT NO:** 1904-RB-64

**ATTN:**   Keith Williams

| **RE:** | | **To:** | | **From:** | | **Number:** |
|---|---|---|---|---|---|---|

**DESCRIPTION OF CHANGE**

Reimbursement for labor and material cost increases.

| Item | Description | Stock# | Quantity | Units | Unit Price | Tax Rate | Tax Amount | Net Amount |
|---|---|---|---|---|---|---|---|---|
| 00001 | Labor | | 1.000 | Lump Sum | $181,912.00 | 0.00% | $0.00 | $181,912.00 |
| 00002 | Material | | 1.000 | Lump Sum | $226,825.00 | 0.00% | $0.00 | $226,825.00 |

| | |
|---|---|
| **Unit Cost:** | $408,737.00 |
| **Unit Tax:** | $0.00 |
| **Lump Sum:** | $0.00 |
| **Lump Tax:** | $0.00 |
| **Total:** | $408,737.00 |

| | |
|---|---|
| The Original Contract Sum was | $7,908,717.67 |
| Net Change by Previously Authorized Requests and Changes | ($284,114.07) |
| The Contract Sum Prior to This Change Order was | $7,624,603.60 |
| The Contract Sum Will be Increased | $408,737.00 |
| The New Contract Sum Including This Change Order | $8,033,340.60 |
| The Contract Time Will Not Be Changed | |
| The Date of Substantial Completion as of this Change Order Therefore is | |

**ACCEPTED:**

**EPSILON ELECTRIC, LLC.**   **GAMMA CONSTRUCTION**

By: _Keith Williams_   By: _Vance Broussard_   By: _____

Date: 5/26/2022   Date: 5/26/2022   Date: **GAMMA 0420**

# Texas Franchise Tax Public Information Report

*To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions*
**This report MUST be signed and filed to satisfy franchise tax requirements**

05-102
(Rev.9-11/30)
FORM
Comptroller of Public Accounts

**Tcode** 13196 Franchise

EXHIBIT C

■ Taxpayer number: 3 2 0 7 6 0 6 1 2 7 7

■ Report year: 2 0 2 1

You have certain rights under Chapter 552 and 559, Government Code, to review, request, and correct information we have on file about you. Contact us at (800) 252-1381 or (512) 463-4600.

Taxpayer name: **EPSILON ELECTRIC, LLC**

Mailing address: **2808 JOANEL ST**

City: **HOUSTON**  State: **TX**  ZIP Code: **77027**  Plus 4:

Secretary of State (SOS) file number or Comptroller file number: **0803779218**

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office: **2808 Joanel, Houston Tx. 77027 5306**

Principal place of business: **2808 Joanel, Houston Tx. 77027 5306**

*Please sign below!* Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

3207606127721

**SECTION A** Name, title and mailing address of each officer, director or manager.

Name: **Keith Williams**  Title: **CEO**  Director: ● YES  Term expiration: m m 1 2  d d 3 1  y y 2 2

Mailing address: **2808 Joanel St**  City: **Houston**  State: **Texas**  ZIP Code: **77027**

Name:  Title:  Director: ○ YES  Term expiration:

Mailing address:  City:  State:  ZIP Code:

Name:  Title:  Director: ○ YES  Term expiration:

Mailing address:  City:  State:  ZIP Code:

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| | | | |
| | | | |

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| **Gamma Construction Co** | **Texas** | | **100.0** |

Registered agent and registered office currently on file. *(see instructions if you need to make changes)*
○ Blacken circle if you need forms to change the registered agent or registered office information.

Agent: **JOE PELTIER**

Office: **2808 JOANEL STREET**  City: **HOUSTON**  State: **TX**  ZIP Code: **77027**

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

sign here ▶ **Joe Peltier**  Title: **Electronic**  Date: **11-09-2021**  Area code and phone number ( ) -

**Texas Comptroller Official Use Only**

VE/DE ○   PIR IND ○

Case 23-03104   Document 1   Filed in TXSB on 06/09/23   Page 22 of 24
EXHIBIT D

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ALL TEXAS ELECTRICAL** | § | **CASE NO. 20-34656** |
| **CONTRACTORS, INC.** | § | |
| | § | **CHAPTER 11** |
| **DEBTOR** | § | |
| | § | |
| | § | |
| | § | |

**UNSWORN DECLARATION OF ARTHUR MONTEMAYOR IN SUPPORT OF**
**CLAIM OBJECTION**

1.      My name is Arthur Montemayor. All statements of fact contained herein are true and correct and are based upon my personal knowledge unless indicated otherwise (including by way of Review (as defined below)) below.

2.      I am the president and sole owner of All Texas Electrical Subcontractors, Inc ("ATE"). ATE is an electrical contractor firm that offers design build, budgeting, re-model, computerized estimating, and turn-key installation.

3.      After I founded ATE in 1994 it grew quickly. For many years ATE has been one of the leading electrical contractors in the greater Houston area. ATE was a proud member of the National Electrical Contractors Association.

4.      On behalf of ATE I made the difficult decision to seek relief under chapter 11 of the Bankruptcy Code  and to wind-down operations in a manner that maximizes ATE's ability to (i) complete economically feasible jobs, (ii)  collect accounts receivables and retainage owed to it, (iii) reject burdensome construction job contracts, and  (iv) minimize—if not eliminate -- the disruption and delay that may result in such rejection.

5.      On September 25, 2020, ATE commenced a case by filing a petition for relief under Chapter 11 of the Bankruptcy Code.

6.      On March 5, 2021, the Court confirmed debtor's liquidating chapter 11 plan.   The confirmed plan became effective on November 15, 2021.

7.       I am the Disbursing Agent under the confirmed plan.

8.      As part of my duties as Disbursing Agent, I have (i) maintained, reviewed and analyzed the books and records of the debtor, (ii) consulted with its former employees (some of whom are assisting me with the liquidation process), and (iii) relied on my years of experience running ATE before and during the bankruptcy case (hereinafter (i) through (iii) being collectedly referred to as my "Review").

9.      Based upon my Review, pre-and post-bankruptcy, the debtor maintained its books and records in the regular course of business.  Based upon my Review, it was and is the regular course of business of the debtor to make records of its business activities at or near the time such activities (i.e., transactions or events) occurred.   Based upon my Review, such records were made either by an employee (or for records made after the bankruptcy commenced, by former employees who assisted on a 1099 basis) of the debtor with personal knowledge of the recorded business activities or by an employee (or for records made after the bankruptcy commenced, by former employees who assisted on a 1099 basis) who received information transmitted by an individual with personal knowledge of the business activities.

10.      Based upon my Review, it was and is the regular course of business of the debtor, post-bankruptcy, to make records of its business activities at or near the time such activities (i.e., transactions or events) occurred.  Based upon my Review, such records were made by myself or by an employee of the debtor  (or for records made after the bankruptcy commenced, by former employees who assisted on a 1099 basis) with personal knowledge of the recorded business activities or by an employee who received information transmitted by an individual with personal

knowledge of the business activities.

11.     I have reviewed the attached objection to proof of claim (the "Objection") prepared by my counsel1.  Based upon my Review, for the reasons set forth in the Objection, the claim of the creditor named in the Objection should be disallowed.

12.     Based on my Review and Debtor's ongoing communications with vendors and Debtor's other investigations of the facts, as summarized in the below chart, Gamma owes Debtor, an aggregate of at least $574,784.00, of which $169,679.50 is retainage.  To be clear, the amount owed by Gamma to Debtor is after all applicable deductions and credits.

| ATE/Gamma job | Amount owed by Gamma to ATE |
| --- | --- |
| Kelsey Cypress | 279.43 |
| Alvin ISD # 8 | 36,508.25 |
| Humble ISD # 29 | -34,881.54 |
| St Francis School | 17,519.93 |
| Kelsey Kingwood HS | 185,082.00 |
| Alvin High School #4 | 370,275.93 |
| Total Amount owed to ATE | 574784 |

13.     I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on March 15, 2023.

_arthur r montemayor_
arthur r montemayor (Mar 15, 2023 17:35 MDT)
Arthur Montemayor

---

1 Not including the draft complaint described therein.